**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 7 |
| | : | |
| **PETER WILLIAM DiGIOVANNI,** | : | |
| | : | |
| Debtor | : | **Bky. No. 09-12738ELF** |

# M E M O R A N D U M

## I.  INTRODUCTION

Presently before the Court is the Motion of Debtor Peter William DiGiovanni ("the Debtor") to Impose a Stay Pursuant to 11 U.S.C. §362(c)(4) ("the Motion for a Stay").  Michele and Norman Demko ("the Demkos") oppose the Motion for a Stay in their capacities as co-Executors of the Estate of Helen J. DiSabato  ("the Estate").  The Estate is an unsecured creditor of the Debtor.

The Demkos oppose the Motion for a Stay on the ground that the Debtor has not filed this bankruptcy case in good faith, but as part of an ongoing, purposeful and improper effort to avoid certain obligations imposed on him by orders issued by the Court of Common Pleas, Chester County, Pennsylvania ("the CP Court").  The Debtor was the Executor of the Estate until the CP Court entered a September 4, 2007 Order removing him and appointing the Demkos to substitute him.  Since that time, the Demkos have sought to compel the Debtor to return certain documents and records the Estate entrusted to him.  In the course of proceedings in the CP Court, the Debtor has been held in contempt for failure to comply with court orders directing him to return Estate documents to the Demkos.  He has also been ordered to reimburse the Estate for certain expenses it has incurred, including attorney's fees.

-1-

For the reasons set forth below, I will grant the Motion for a Stay and enter an order restraining the Demkos from proceeding in the CP Court to enforce the Estate's right to collect the monetary obligations the CP Court imposed on the Debtor.  However, I will not restrain Mr. and Mrs. Demko from enforcing the Debtor's non-monetary obligations to the Estate in the CP Court.


## II.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Most of the facts pertinent to the resolution of the Motion for a Stay are undisputed[1] and are summarized below.  I will also set out a brief history of the Debtor's previously-filed and dismissed bankruptcy case and the somewhat convoluted procedural history of his current bankruptcy case.


### A.  The Prepetition State Court Contempt Orders

Helen J. DiSabato died on March 11, 2005.  On April 3, 2006, the Debtor, a lawyer, became Executor of the Estate.  (See Ex. R-3 ¶¶3-4; Ex. R-4 ¶¶3-4).  Having failed to perform any of the services required to complete administration of the Estate, the Debtor was removed as Executor (by consent) by court order dated September 4, 2007.  (See Ex. R-3 ¶¶ 5-8; Ex. R-4 ¶¶5-8).  The same CP Court order that removed the Debtor as Executor of the Estate appointed the Demkos to replace him and directed the Debtor "to return to the [Demkos] all records that were entrusted to him as well as all estate documents."  (See Ex. R-3 ¶8 & Ex. A; Ex. R-4 ¶8).

---

[1]        One of the documents admitted into evidence was the Demkos' second petition for contempt, which set forth a history of  many of the relevant prepetition events.  It was included as part of Exhibit R-3, an exhibit that was not paginated and that includes various other pleadings, exhibits and orders from the CP Court proceedings.  (See Ex. R-3). The Debtor admitted many of the allegations of the second petition for contempt in his written response to that petition.  (See Ex. R-4).

The Debtor failed to comply with the CP Court's September 4, 2007 Order.  The

Demkos filed a Petition for Contempt on October 19, 2007.  (See Ex. R-3 ¶3; Ex. R-4 ¶12).

After a hearing, the CP Court granted the Petition for Contempt by order dated December 17,

2007.  (See Ex. R-3 ¶14 & Ex. C; Ex. R-4 ¶14).  The CP Court's December 17, 2007 Order

required the Debtor to turn over all Estate records to the Demkos' counsel by January 11, 2008 to

purge the contempt and to pay reasonable attorney's fees and costs, to be determined by the

court, "as a sanction."  (Ex. R-3, Ex. C).

The Debtor did not comply fully with the CP Court's December 17, 2007 Order.

Accordingly, on July 22, 2008, the Demkos filed a second contempt petition ("the Second

Petition").  (See Ex. R-3 ¶4).  In his response to the Second Petition, the Debtor admitted that he

failed to cooperate with the Demkos and that he was "liable", but ascribed his conduct to his

"negligence, not some intentional refusal."  (See Ex. R-4 ¶¶23-24).

Thereafter, the CP Court issued two orders dated October 9, 2008.  In one order, the CP

Court held the Debtor in contempt and ordered that, to purge the contempt, the Debtor pay

$6,209.55 (representing the sum of various tax penalties, costs and interest the Estate incurred)

within fifteen (15) days or a bench warrant would be issued for the Debtor's arrest.  (Ex. D-1).  In

the second order, the CP Court held the Debtor in contempt of its December 17, 2007 Order and

ordered that, to purge the contempt, the Debtor pay $23,070.00 in attorney's fees within thirty

(30) days.  (Ex. R-6).  This second order stated that if the Debtor did not comply with its terms

within thirty (30) days, he would be held in further contempt of court, with additional sanctions

to be determined by the CP Court.  (Id.)

-3-

**B.  The First Bankruptcy Filing**

The Debtor filed his first chapter 7 bankruptcy case ("the First Case") on October 23, 2008.  (Bky. No. 08-16963, Docket Entry No. 1).  The Debtor commenced the First Case by filing a bankruptcy petition without the required schedules and statements.  See generally Fed. R. Bankr. P. 1007(c) (except as otherwise provided in the rules, debtor must file the required statements and schedules within fifteen (15) days of filing the bankruptcy petition).  The missing documents included Bankruptcy Schedules A to J, the Statement of Financial Affairs, Statement of Current Monthly Income, the mailing matrix and a Certificate of Credit Counseling.

On October 24, 2008, the court issued an order providing that the case may be dismissed without further notice or hearing if the Debtor failed to file a Certificate of Credit Counseling or request a waiver from this requirement by October 30, 2008 and/or failed to file the other required documents by November 7, 2008.  (Bky. No. 08-16963, Docket Entry No. 4).  At the hearing on the Motion for a Stay, the Debtor explained that he failed to obtain credit counseling in advance of filing the First Case because he was unaware of this eligibility requirement, see 11 U.S.C. §109(h).  Believing his failure to obtain prepetition credit counseling was fatal to his ability to proceed successfully with the First Case, the Debtor made no effort to file any of the other documents referenced in the court's October 24, 2008 order.

On November 12, 2008, the court dismissed the First Case due to the Debtor's failure to file the documents referenced in the October 24th order.  (Bky. No. 08-16963, Docket Entry No. 7).

**C.  The CP Court Bench Warrants**

On April 8, 2009, the CP Court issued a bench warrant for the Debtor's arrest due to the

Debtor's failure to comply with the CP Court's October 9, 2008 Orders.  This was the <u>second</u>

bench warrant issued for the Debtor.  The first bench warrant issued on October 30, 2008, during

the pendency of the First Case, but does not appear to have been executed.  (<u>See</u> Ex. R-7).  The

second bench warrant resulted in the Debtor's arrest and incarceration for one (1) day.


**D.  The Second Bankruptcy Filing**

On April 15, 2009, the Debtor commenced the present bankruptcy case ("the Second

Case") by filing a voluntary petition under chapter 7.  (Docket Entry No. 1).  The Debtor did not

file the bankruptcy schedules and other statements required by Fed. R. Bankr. P. 1007(c) with his

bankruptcy petition.  His petition was accompanied by Exhibit D, <u>i.e.</u>, the Debtor's Statement of

Compliance With the Credit Counseling Requirement, however.  (Docket Entry No. 3).  In

Exhibit D, the Debtor stated that he had received the prepetition credit counseling required by 11

U.S.C.§109(h), but had not yet received a certificate from the counseling agency.  (<u>Id.</u>).

On April 16, 2009, the court issued an order requiring the Debtor to file a Certificate of

Credit Counseling and creditor's matrix within seven (7) days of the filing of his petition and the

other required documents within fifteen (15) days of the filing of his petition.  (Docket Entry No.

7).  The order provided that if the Debtor did not comply, the Second Case may be dismissed

without further notice or hearing.  (<u>Id.</u>).

On April 17, 2009, the Debtor filed a Certificate of Credit Counseling.  (Docket Entry

No. 8).  On its face, the Certificate of Credit Counseling contradicted the previously filed Exhibit

D.  The Certificate stated that the Debtor received his credit counseling on April 17, 2009, two

days <u>after</u> his bankruptcy petition was filed.  On April 22, 2009, the court issued an order noting

the inconsistency between the representation made in Exhibit D and the subsequently filed

Certificate of Credit Counseling, and scheduling a hearing for May 13, 2009 to consider

dismissing the bankruptcy case due to the Debtor's potential ineligibility to be a bankruptcy

debtor based on the seeming failure to comply with 11 U.S.C. §109(h).  (Docket Entry No. 14).

On May 4, 2009, the Debtor filed his bankruptcy schedules and statements in the Second

Case.  (Docket Entry Nos. 24-40).[2]  The Debtor's bankruptcy schedules disclose that the Debtor:

- owns no real estate;

- has personal property with a total value of $11,600.00 (of which more than $7,000.00 is based on his ownership of two (2) automobiles, one of which he states is "not running");

- has claimed all of his assets exempt under 11 U.S.C. §522(b)(2);

- has one secured debt (an automobile loan of $7,084.00);

- has $3,868.68 in priority tax debt;

- has more than twenty (20) unsecured creditors and unsecured debt in excess of $69,700.00 (including a debt to the Demkos scheduled at $30,000.00);

- has average monthly income of $2,500.00 (pre-tax); and

- has average monthly expenses of $2,748.00.

(Schedules A-J, Docket Entry Nos. 24-29, 32-33).

On May 11, 2009, the Debtor filed a Motion to Extend the Automatic Stay under 11

U.S.C. §362(c)(3) ("the Motion to Extend").  (Docket Entry No. 43).[3]  The Debtor also requested

---

[2]     The Debtor had previously filed a creditor's matrix and had requested and received an extension of time to file the other required documents.  The Debtor's Statement of Financial Affairs was filed on May 5, 2009.  (Docket Entry No. 40).

[3]     The Demkos filed an Objection to the Motion to Extend on May 13, 2009.  (Docket Entry No. 52).  The Debtor's Response to the Demko's Objection was filed on May 14th.  (Docket Entry No. 55).

that the court schedule an expedited hearing on the Motion to Extend.  (See Docket Entry No.

46).  In response, the court entered an Order scheduling a hearing on the Motion to Extend for

May 14, 2009.  (Docket Entry No. 49).

**E.  Dismissal of the Second Case**

On May 13, 2009, the Court held a hearing to consider dismissing the Second Case for

failure to comply with the credit counseling requirement of 11 U.S.C.§109(h).  The Debtor failed

to appear at the hearing.  Consequently, the Court signed an order that day dismissing the Second

Case.  The May 13th Dismissal Order was entered on the docket on May 14, 2008.  (Docket Entry

No. 56).

**F.  Mootness of the Motion to Extend**

The next day, May 14, 2009, the Debtor appeared at the hearing scheduled on his Motion

to Extend.  The Demkos' counsel also appeared.

At the hearing, the Court engaged in a colloquy with the Debtor, explaining that the

Motion to Extend was moot due to the dismissal of the Second Case the prior day.  The Debtor

made an oral motion to reinstate his bankruptcy case, which the court denied without prejudice to

the Debtor's right to file a motion in compliance with the Federal Rules of Bankruptcy Procedure

and Local Bankruptcy Rule 9014-3.  At the conclusion of the colloquy, the Debtor said that he

intended to file such a motion.

**G.  Reinstatement of the Dismissed Second Case and Filing of the Motion for a Stay**

On May 15, 2009, the Debtor filed three motions: (1) a Motion to Reconsider the

Dismissal ("the Reconsideration Motion"); (2) the Motion for a Stay and (3) a Motion to Expedite the hearings on the first two (2) motions. (Docket Entry Nos. 59-61). The court granted the Debtor's request for expedited hearings and held a hearing on the Reconsideration Motion and the Motion for a Stay on May 27, 2009. The Demkos' counsel filed a written response in opposition to both motions and appeared at the hearing on their behalf. (Docket Entry No. 66).

The Debtor testified at the May 27, 2009 hearing and the Demkos' counsel cross-examined him. Both parties offered exhibits into evidence.

At the conclusion of the hearing, the court orally granted the Reconsideration Motion,[4] but took the Motion for a Stay under advisement, allowing the parties to make written submissions. Both parties filed their submissions on June 3, 2009. (Docket Entry Nos. 69-70). Consequently, the matter is ready for decision.

---

[4]    I granted the Reconsideration Motion because I found that: (1) the Debtor's failure to appear at the May 13, 2009 hearing to contest dismissal of the case occurred due to excusable neglect, see generally Chemetron Corp. v. Jones, 72 F.3d 341, 349 (3d Cir. 1995) ("The determination whether a party's neglect of a bar date is 'excusable' is essentially an equitable one, in which courts are to take into account all relevant circumstances . . . .") and (2) the Debtor testified credibly that he completed his prepetition credit counseling briefing prior to filing the bankruptcy petition that commenced the Second Case and that the counseling certificate contained a clerical error in stating the counseling was not completed until two (2) days after the filing of the bankruptcy petition.

I did not promptly enter a written order memorializing the oral decision granting the Reconsideration Motion and the docket states, incorrectly, that both motions were taken under advisement. (See Docket Entry No. 68). The error was later corrected. A written order dated June 11, 2009 has been entered granting the Reconsideration Motion. (See Docket Entry No. 72).

## III.  DISCUSSION

The Debtor's Motion for a Stay poses a straightforward question:  Should the Demkos be restrained from enforcing the obligations imposed on the Debtor by the CP Court's prepetition civil contempt orders?

Before that question may be considered, however, it is necessary to analyze the effect the Debtor's idiosyncratic bankruptcy history has had on the pendency of the automatic stay, as well as the statutory authority, if any, that empowers the court to grant the relief requested in the Motion for a Stay.

### A.  Source of Applicable Substantive Law

Subsection (a) of 11 U.S.C. §362 sets forth the scope of the automatic stay.  See 11 U.S.C. §362(a).  Subsection (b), in turn, sets forth certain exceptions or limitations to that range. See 11 U.S.C. §362(b).

As the court noted in In re Tubman, 364 B.R. 574 (Bankr. D. Md. 2007):

> Section 362(c) generally identifies the ways by which the automatic stay of Section 362(a) can terminate independent of a judicial determination made under Section 362(d).  Sections 362(c)(3) and (4) are relatively new, having been added to Title 11 by [the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA)] and made effective on October 17, 2005.  Section 362(c)(3) is applicable to one-time repeat bankruptcy filers - debtors who have had only one bankruptcy case dismissed within the previous year.  For one-time repeat filers, the automatic stay terminates on the 30th day post-petition unless a party in interest files a motion to extend the automatic stay that is noticed and heard by the Court before the expiration of the 30-day period.
>
> * * *
>
> By contrast, [s]ection 362(c)(4) applies to multiple repeat filers, meaning debtors who have had two or more bankruptcy cases dismissed within the previous year.  For multiple repeat filers, the automatic stay does not even

go into effect upon the filing of the later case.  Indeed, a party in interest
can seek to have the court impose the automatic stay by filing a motion
within 30 days after the filing of the later case.

Id. at 579 (emphasis added).

When the Debtor filed the current bankruptcy case (defined above as the Second Case),

he was a "one-time repeat bankruptcy filer" – i.e., he filed this case within one (1) year after

having had one (1) bankruptcy case pending and dismissed.  Upon filing, the protections of

§362(a) applied, but §362(c)(3) also applied and set the conditions and deadline for portions of

the automatic stay to expire.

Section 362(c)(3) is self-executing.  E.g., Tubman, 364 B.R. at 580.  In bankruptcy cases

in which §362(c)(3) applies, the automatic stay expires on the thirtieth (30th) day after the filing

of the later case  – here, on May 15, 2009 – unless a motion to extend the stay is filed, noticed

and heard before the 30-day period expires.  See 11 U.S.C. §362(c)(3).

In this case, although the Debtor filed a §363(c)(3) Motion to Extend on May 11, 2009

and the hearing on that motion was set for May 14th, the dismissal of his case on May 13th

rendered the Motion to Extend moot.  The day before the scheduled hearing on the §362(c)(3)

motion, the automatic stay terminated by operation of law due to the dismissal of the case.  See

id. §362(c)(1), (2).

The Second Case was reinstated on May 27th when the court granted the Debtor's Motion

for Reconsideration.  See n.4 & accompanying text.  The precise consequence the reinstatement

had on the automatic stay in the circumstances of this case is debatable.  I perceive at least two

(2) ways of analyzing the question.

First, one can conceptualize the automatic stay as being incapable of "springing back"

-10-

into existence on May 27th because §362(c)(3) commands that the stay cannot endure past the

thirtieth (30th) day of the case, unless it is extended after a hearing concluded by the thirtieth

(30th) day.  See, e.g., In re Ajaka, 370 B.R. 426, 428 (Bankr. N.D. Ga. 2007).  Such a result may

be consistent with the general principle that the automatic stay is not reimposed retroactively by

reinstating the case.  See, e.g., In re Gargani, 398 B.R. 839, 840-41 (Bankr. W.D. Pa. 2009).  If,

as this theory posits, the automatic stay cannot be extended by operation of law under §362(c)(3),

after reinstatement of the case, due to the passage of time, the next question is whether a

bankruptcy court has any statutory authority to reimpose those portions of the automatic stay that

expired by operation of 11 U.S.C. §362(c)(3).  There is a split of authority on that issue.[5]

Alternatively, one can conceptualize §362(c)(3) as providing a "shelf life" for the

automatic stay (as to the debtor) of thirty (30) days.  Here, the case was dismissed on the twenty-

eighth (28th) day, thereby terminating the stay under §362(c)(2).  Upon reinstatement, the

automatic stay "sprung back" into existence, subject to its potential expiration two (2) days later

pursuant to §362(c)(3).  Under this approach, after the reinstatement of the case, it was still

possible for the court to extend the stay under §362(c)(3), provided that the hearing on the

Debtor's motion was concluded within two (2) days after reinstatement.  That occurred here.

Which of the two analyses above (or what other analysis) is correct?  In this case, I need

---

[5]        Some courts have held that the bankruptcy court has no such power.  E.g., In re Garrett,
357 B.R. 128, 131 (Bankr. C.D. Ill. 2006).  Other courts have held that the bankruptcy court has authority
to reimpose the automatic stay after it terminates by operation of law under §362(c)(3) if the proper
factual showing is made.  At least one court found that the legal authority for doing so emanates from 11
U.S.C. §362(c)(4), e.g., In re Toro-Arcila, 334 B.R. 224 (Bankr. S.D. Tex. 2005), while other courts have
authorized the reimposition of the stay through the court's power under 11 U.S.C. §105(a).  E.g., In re
Whitaker, 341 B.R. 336, 346-47 (Bankr. S.D. Ga. 2006); accord In re Williams, 346 B.R. 361, 371
(Bankr. E.D. Pa. 2006).  There is no binding precedent on the question in this Circuit.  Cf. In re
Wedgewood Realty Group, 878 F.2d 693 (3d Cir. 1989) (bankruptcy court has power under §105 to
reimpose a stay that lapsed by the passage of time and operation of law under 11 U.S.C. §362(e)).

not decide the issue.  At the May 27th hearing, the parties expressly agreed that the Debtor's

entitlement to the entry of an order staying the Demkos from enforcing the monetary obligations

imposed by the CP Court's orders should be determined by applying the legal standards set forth

in 11 U.S.C. §362(c)(4).  Because this issue does not implicate the court's subject matter

jurisdiction, but only the reach of the Bankruptcy Code with respect to the parties before the

court, I find it appropriate to accept the parties' stipulation regarding the substantive rule of

decision to be applied to their dispute.[6]


**B.  Determination of the Debtor's Good Faith Under §362(c)(4)**

**1.**

Pursuant to §362(c)(4)(B), a court may order the automatic stay to take effect in a case

only if the movant "demonstrates that the filing of the later case is in good faith as to the

creditor[] to be stayed."  Id.  Subsection (D) of §362(c)(4) delineates certain circumstances

pursuant to which a case is presumptively considered to have been filed "not in good faith."[7]

---

[6]    The parties were not explicit on this point, but I understand their stipulation also to mean
that they have accepted the first of the two (2) conceptual frameworks discussed above in the text  – i.e.,
that no stay came into existence under §362(c)(3) as to the Demkos upon reinstatement of the case.  In
effect, the parties have stipulated that the holding in Toro-Arcila should govern this matter.  I note also
that only the parties before the court are bound by this agreement and not the Debtor's estate, see, e.g., 11
U.S.C. §558, or the Debtor's other creditors.

[7]    Section 362(c)(4)(D) provides standards for determining if the presumption that the case
was not filed in good faith arises:

(D) for purposes of subparagraph (B), a case is presumptively filed not in good faith (but
such presumption may be rebutted by clear and convincing evidence to the contrary)—
(i) as to all creditors if—
(I) 2 or more previous cases under this title in which the individual was a
debtor were pending within the 1-year period;

Where the presumption applies, a debtor may rebut it by clear and convincing evidence.

Here, the Demkos argue that the presumption applies based on the Debtor's failure to file

the required schedules and statements in the First Case.  See 11 U.S.C. §362(c)(4)(D)(i)(II).[8]

Citing cases decided under 11 U.S.C. §109(g),[9] they contend that the Debtor's failure to file the

required documents in the First Case was knowing and voluntary, giving rise to the presumption.

They also suggest that the Debtor's decision to permit dismissal of the First Case was part of a

larger pattern of the Debtor's inexcusable disregard for court orders.

I find that the §362(c)(4)(D)(i)(II) presumption does not apply.  I accept as a "substantial

excuse" the Debtor's explanation that he was unaware of the prepetition credit counseling

---

(II) a previous case under this title in which the individual was a debtor was dismissed within the time period stated in this paragraph after the debtor failed to file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney), failed to provide adequate protection as ordered by the court, or failed to perform the terms of a plan confirmed by the court; or

(III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under this title, or any other reason to conclude that the later case will not be concluded, if a case under chapter 7, with a discharge, and if a case under chapter 11 or 13, with a confirmed plan that will be fully performed; or

(ii) as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, such action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to such action of such creditor.

[8]      (Demkos' Br. at 3, 5-6, Docket Entry No. 69).

[9]      They cite In re Lami, 2003 WL 262484 (Bankr. E.D. Pa. Jan. 2, 2003) and In re Aucoin, 1999 WL 1080364 (Bankr. E.D. Pa. Nov. 29, 1999).

-13-

requirement of §109(h) prior to filing the First Case[10] and that, once he learned of the

requirement, he did not file the additional, required documents because he believed doing so

would be futile.  Ultimately, the First Case may not have viable due to a substantive problem –

the Debtor's ineligibility to be a debtor based on 11 U.S.C. §109(h).  The Debtor recognized the

problem only after he commenced the case and had a reasonable basis to believe that  the

problem was incurable.[11]   In these circumstances, I conclude that, for purposes of

§362(c)(4)(D)(i)(II), the First Case was not dismissed for failure to "file . . .  documents as

required by this title [i.e., the Bankruptcy Code] or the court without substantial excuse . . . ." and

the statutory presumption that the case was not filed in good faith is not applicable.


**2.**

I next address whether the Debtor has established that the filing of the Second Case was

in "good faith" as to the Demkos as §362(c)(4)(B) requires.  The Debtor bears the burden of

proof on the issue by a preponderance of the evidence.

The Demkos contend that the history of the Debtor's conduct in both the CP Court and

this court suggests that the Debtor has acted purposefully to delay and frustrate enforcement of

---

[10]      The Debtor testified that he was unaware of the credit counseling requirement when he filed the First Case.  I found his testimony on this point credible. While he is a practicing attorney, he does not appear have experience handling bankruptcy cases.

[11]      The Debtor's belief that his failure to obtain prepetition credit counseling would not be excused by his ignorance of the credit counseling requirement is supported by a number of reported decisions dismissing cases in which debtors stated that they were unaware of the prepetition credit counseling requirement.  See In re Duplessis, 2007 WL 118945 (Bankr. D. Mass. Jan. 11, 2007); In re Thompson, 344 B.R. 899 (Bankr. S.D. Ind. 2006), vacated on other grounds, 249 Fed. Appx. 475 (7th Cir. 2007) (not for publication); In re Valdez, 335 B.R. 801 (Bankr. S.D. Fla. 2005); In re Rodriguez, 336 B.R. 462 (Bankr. D. Idaho 2005).

the CP Court's order – in other words, that the Debtor has continuously acted in bad faith.

However, I am satisfied that the Debtor has met his burden of proving that he acted in good faith

in filing the Second Case.

In Ferguson, 376 B.R. 109 (Bankr. E.D. Pa. 2007), a chapter 13 case involving a request

for imposition of a stay under §362(c)(4), I surveyed the various tests courts have employed in

assessing whether a debtor's bankruptcy filing is in good faith and observed that courts have

considered as many as fourteen (14) factors in assessing good faith.  See 376 B.R. at 121-24.[12]

In the present case, I find it useful to employ the more concise formulation expressed in

In re Sarafoglou, 345 B.R. 19 (Bankr. D. Mass. 2006).  In Sarafoglou, the court stated that to

establish his or her good faith, a debtor must show that he or she:

> 1.　　filed the case "to obtain legitimate bankruptcy law protection";
>
> 2.　　"is eligible for such protection and relief";
>
> 3.　　"is pursuing such protection and relief honestly"; and
>
> 4.　　"has sufficient resources to render [the] pursuit thereof meaningful".

Id. at 24.[13]

---

[12]　　As I observed in Ferguson, it is not

> necessary to evaluate each and every factor that has been considered by a court
> in a reported decision. Rather, [the court] may refer to the checklists as a guide, .
> . . consider[ing] those factors that are most relevant in the circumstances of the
> particular case at hand.

376 B.R. at 125.

[13]　　A number of the numerous good faith factors that the courts have developed are designed
to address the particular concerns in cases involving debtors who invoke chapter 13 on multiple
occasions to prevent foreclosure of their homes.  In particular, some of the factors relate to the potential
for a rehabilitation or reorganization of the debtor's financial affairs.  These considerations do not come
into play in a chapter 7 case, particularly a no-asset case as the present case appears to be.  Therefore,

Reference to these standards leads me to conclude that the Debtor filed the present case in good faith.[14]

Here, the Debtor has filed his bankruptcy schedules and statements.  No issue has been raised questioning the Debtor's accuracy and honesty in making the required financial disclosures.  Those disclosures suggest that the Debtor is burdened with a substantial amount of unsecured debt (in excess of $70,000.00), with the debt to the Demkos (of approximately $30,000.00), representing less than one-half (½) of the unsecured debt.  His disclosed income and expenses show no present ability to repay the outstanding debt from his current income.  The Debtor's assets also are modest and were claimed as exempt under 11 U.S.C. §522(b)(2).

The overall picture painted by the Debtor's bankruptcy schedules is of an individual who is overextended, unable to meet his financial obligations and who may obtain some benefit from chapter 7 bankruptcy relief.  Certainly, the debt to the Demkos represents a substantial percentage of the Debtor's liabilities and most likely his most acute financial problem.  However, even if that debt is determined to be nondischargeable, the bankruptcy case still may provide the Debtor with a meaningful degree of financial relief.  Although the Debtor unquestionably made some errors in representing himself, those problems have been resolved and the Second Case appears to be on track to be completed smoothly and expeditiously.

---

although formulated in a chapter 13 case, in my view, the straightforward good faith test stated in Sarafoglou is well suited for evaluating whether a stay should be imposed under §362(c)(4) in this chapter 7 case.

[14]   The first and second parts of the Sarafoglou test find expression in 11 U.S.C. §362(c)(4)(D)(i)(III), which provides that a presumption of a bad faith filing exists if there has not been a substantial change in the debtor's financial or personal affairs since the dismissal of the most previously filed case and there is no other reason to conclude that the later filed case will end with a chapter 7 discharge.  In evaluating a debtor's good faith, courts will consider the converse of the statutory test for the presumption of bad faith.  See Ferguson, 376 B.R. at 119-21.

**3.**

In support of their argument that the Second Case was filed in bad faith, the Demkos emphasize what they consider to be the wrongfulness of the Debtor's prepetition conduct and ask me to infer, from his prepetition conduct and the stumbling manner in which the Debtor represented himself in the two (2) bankruptcy cases, that he filed that he intended to further delay them from enforcing their rights under the CP Court orders by filing the Second Case.

Although the Demkos raise some legitimate concerns, my assessment of the Debtor's testimony, his demeanor, and the financial condition described in his sworn disclosures suggest that the Debtor has not purposely mishandled his own bankruptcy case to achieve some tactical advantage in his legal dispute with the Demkos.  The Debtor's objective need for debt relief through a bankruptcy discharge (and therefore, his need for a successful outcome in his case) also suggests that it is not likely that the Debtor has been purposefully mismanaging the case to achieve some short term benefit.

**4.**

Next, the Demkos state that "the Estate believes it has sufficient evidence to challenge the dischargeability of the debt . . . ."  (Demkos Br. at 3).  They contend that the Debtor's lack of good faith is demonstrated by the nondischargeability of his most pressing debt  – the liability to the Estate arising from the civil contempt orders.  They do not elaborate on their reasons for their belief nor articulate legal theory for the nondischargeability of the debt.

If the nondischargeability of the monetary liability arising from the civil contempt orders were indisputable, perhaps the Demkos' argument would carry more force.  In other words, a chapter 7 filing by a debtor with a prepetition history of impeding the rights of an unsecured

creditor who is owed an obviously nondischargeable debt, in appropriate circumstances, might

support the inference that the debtor's bankruptcy filing was intended for an improper purpose,

such as further delay or harassment of the creditor. Here, however, on the present record, I

cannot draw the conclusion that the debt is obviously nondischargeable. At this stage, it is

premature to conclude that the Debtor cannot contest a nondischargeability claim in good faith.[15]

And, if the Debtor is successful, he has the potential to discharge virtually all of his substantial

unsecured indebtedness. Therefore, I will draw no adverse inference regarding the Debtor's good

faith from the potential nondischargeability of his debt to the Estate.

---

[15]    Some courts have found that the "[f]ailure to comply with court directives contained in
an injunction order satisfies the definition of 'willful and malicious' within 11 U.S.C. §523(a)(6)." E.g.,
In re Allison, 176 B.R. 60, 64 (Bankr. S.D. Fla. 1994). Because §523(a)(6) does not make monetary
liabilities imposed in a contempt order nondischargeable per se, however, other courts have reasoned that
"whether contempt sanctions are nondischargeable . . . depends not on whether they are labeled as
'contempt,' but on whether the conduct leading to them was 'willful and malicious.'" See In re Suarez,
400 B.R. 732, 737 (B.A.P. 9th Cir. 2009); see also In re Romm, 2006 WL 3692416, at *3 (Bankr. N.D.
Ill. Dec. 13, 2006).

        Similarly, some courts have suggested that civil contempt sanctions may be
nondischargeable under 11 U.S.C. §523(a)(7), at least when they are "imposed to uphold the dignity and
authority of the court." See In re Hercules Enter., Inc., 387 F.3d 1024, 1029 (9th Cir. 2004) (in dicta); In
re Travis, 364 B.R. 285, 287 (Bankr. N.D. Ohio 2006). Yet, other courts have held that a civil contempt
sanction payable to a private litigant is not excepted from discharge by §523(a)(7) because it is does not
satisfy the statutory requirement of being "payable to and for the benefit of a governmental unit." See
Hughes v. Sanders, 469 F.3d 475, 479 (6th Cir. 2006); In re DeMaskey, 2008 WL 2991672, at *6 -7
(Bankr. W.D. Wash. Aug. 1, 2008); In re McDowell, 2008 WL 4000625, at *3-4 (Bankr. S.D. Fla. Jan.
28, 2008); see also In re Rashid, 210 F.3d 201, 207 (3d Cir. 2000) (federal restitution obligation
dischargeable because it was payable to private victim and not payable to and for the benefit of the
governmental unit).

        I do not pass on these questions. I suggest only that, in the context of assessing the
Debtor's good faith in initiating the Second Case, it is premature to form any firm view regarding the
dischargeability of the underlying debt. Therefore, it is not possible to conclude that the Debtor is acting
in bad faith in seeking bankruptcy relief because of the potential dischargeability of his largest, but by no
means sole, debt.

**5.**

After considering all of the circumstances presented, I conclude that the Debtor has

invoked bankruptcy relief for a proper purpose, appears eligible to obtain a discharge of all, or at

least a substantial portion, of his prepetition indebtedness.  He, appears to be seeking that relief

honestly and able to take the necessary action to permit case administration to proceed in an

appropriate fashion.

 I find that the Debtor filed the Second Case in good faith.  Accordingly, the Debtor

satisfied the requirements for the imposition of the stay under 11 U.S.C. §362(c)(4).


**6.**

I write further to point out briefly that imposing the stay in this case is consistent with

bankruptcy policy.

If no stay is imposed, the Debtor is subject to the genuine risk of arrest via bench warrant

based on the enforcement of a prepetition monetary claim that may be dischargeable in this

bankruptcy case.  That risk threatens injury to the Debtor that outweighs the detriment the

Demkos will suffer if their debt collection efforts are deferred until the dischargeability of the

debt is determined.

Generally speaking, the bankruptcy system contemplates that such claims will not be

enforced against a debtor prior to a determination of dischargeability and, even if found

nondischargeable, not until the court grants relief from the automatic stay for "cause."  See 11

U.S.C. §362(d)(1).  Further, at least one of the potential legal theories of nondischargeability

available to the Demkos (i.e., 11 U.S.C. §523(a)(6)), is one over which the bankruptcy court has

exclusive jurisdiction.  See 11 U.S.C. §523(c).

These considerations contribute to my conclusion that imposition of the automatic stay is appropriate in this case.


## C. The Scope of the Imposed Stay

Section 362(c)(4)(B) provides the court with discretion in fashioning the scope of a stay imposed under §362(c)(4).  The statute states that the court "may order the stay to take effect as to any or all creditors (subject to such conditions or limitations as the court may impose)."  Id. (emphasis added).

In the circumstances presented, I find it equitable to impose the stay against the Demkos for the limited purpose of restraining their efforts to collect the Debtors' monetary obligation to the Estate.  The Order granting the Debtor relief will include appropriate qualifications to permit the Demkos to enforce any non-monetary obligations that the Debtor may have in connection with the state court proceedings.  Limiting the relief granted in this fashion is designed to ensure that the Debtor will remain accountable to the Demkos with respect to his fiduciary obligation to turn over Estate records and be subject to enforcement remedies in the CP Court for any future failure to do so.


## IV.  CONCLUSION

After considering both the prepetition history between the parties and the procedural anomalies that have taken place in this court, I appreciate how the Debtor's bungling of his pro se bankruptcy representation might fuel the Demkos' cynicism regarding the Debtor's motivations and why they urge the court to find that the Debtor has not filed his bankruptcy case in good faith.  I also understand that the Demkos may feel extremely frustrated.  Nonetheless, at this

point, I am not convinced that the Debtor is consciously engaging in an improper manipulation of the bankruptcy system.[16]  Presently, I find the Debtor's chapter 7 case to be a relatively conventional one, motivated by the concerns that individual chapter 7 debtors typically have. Therefore, justice is best served by permitting this bankruptcy case to unfold in a customary manner – with a stay in place – at least until the dischargeability of the unsecured debt at issue is determined.

For these reasons, I will grant the Motion for a Stay and impose a stay that precludes the Demkos from enforcing their collection rights with respect to the payment obligations created by the CP Court's contempt orders, but otherwise allows them to enforce the Debtor's non-monetary obligations (i.e., his obligation to produce documents in his possession) in the CP Court.

Date:  July 16, 2009

_____
ERIC L. FRANK
U.S. BANKRUPTCY JUDGE

---

[16]        In other words, I will give the Debtor the benefit of the doubt with respect to the problems that have arisen in this court and conclude that he has proved his good faith by a preponderance of the evidence.  However, if he is responsible for any further problems that interfere with the efficient administration of his case, I am prepared to revisit the issue.